## STATE v. McGUIRE.

1. **Court:** ADJOURNMENT OF TERM: RECORD ENTRY. Where a judge before the date fixed for holding a term of court directed the clerk by letter to adjourn the term to a later date, whereupon the clerk notified jurors, witnesses and suitors by letter, and published a notice of the adjournment in a newspaper, but no formal adjournment was made by him and no record entry made at the time, it was held that the facts authorized an order for a *nunc pro tunc* entry of the adjournment upon the record after the beginning of the term, and that a defendant tried and convicted of a crime at such adjourned term could not question the legality of the adjournment without a showing of prejudice.

2. **Criminal Law:** MURDER: JOINT INDICTMENT. Evidence considered and held to justify a conviction for murder upon a joint indictment of the defendant with others.

*Appeal from Grundy District Court.*

THURSDAY, MARCH 18.

AT the September term, 1877, of the Grundy District Court, the defendant was jointly indicted with Stephen McEnery, Timothy Murphy and William McDermott for the murder of one John Mundt. A special term of said court was held in the month of December, 1877, at which term the said parties demanded separate trials, and the cause was, upon the motion of the district attorney, continued to the next regular term of said court. The time fixed in the manner prescribed by law for the commencement of the next term was April 22, 1878. No court was actually held at that time, but an adjournment was ordered until June 3, 1878, at which term, and on the third day thereof, the trial of this defendant was commenced to the jury, and continued to the eighth day of said term, at which time the defendant was found guilty of murder in the second degree. He was sentenced to imprisonment in the penitentiary for the period of ten years, from which judgment of conviction and sentence he appeals to this court.

*E. P. Baker, J. W. Slater, Bonorden & Ranck* and *Sam. H. Fairall,* for appellant.

*J. F. McJunkin, Attorney General,* for the State.

ROTHROCK, J.—I. Before the jury was impaneled the defendant entered a written protest against being tried at that

*1. COURT: ad-journment of term : record entry:*

time, and alleged as ground therefor that the adjourned or special term was unauthorized, and that all proceedings at said term were void. The protest was overruled by the court, and the trial was had against the defendant's objection. It is now urged that the trial and all the proceedings appertaining thereto were void. The record shows that for some time prior to the 22d of April, 1878, the judge of said court was absent from the State, attending to some business at Washington City, and being apprehensive that he would not be able to dispose of such business in time to hold the regular term in Grundy county, commencing on said 22d day of April, he notified the clerk of said court by telegraph on the 11th of April to adjourn the term until June 3d. On the 12th day of the same month he again telegraphed the clerk to adjourn the court until June 3d. On the 14th of April he addressed a letter to the clerk directing him to adjourn the court until the 3d day of June. The clerk received these orders sometime before the 22d day of April. He made no public proclamation of an adjournment of the term on the 22d, but published a notice of said adjournment in a newspaper in said county, and gave notice by letter to the parties who had causes in court, and to the jurors and witnesses. The telegrams and letter from the judge were in the possession of the clerk, but were not marked filed until after the defendant filed his said protest, and no entry of an adjournment was made of record until after the protest was filed, when the court directed the clerk to make an entry, *nunc pro tunc,* of the adjournment, which was accordingly done.

Section 169 of the Code provides that: " If the judge is sick,

or for any other sufficient cause is unable to attend court at the regular time, he may by a written order direct an adjournment to a particular day therein specified, and the clerk shall on the first day of the term, or as soon thereafter as he receives the order, adjourn the court as therein directed." It is urged that the cause assigned by the judge for making the order was insufficient. However that may be, we do not think it is a question that can be determined upon this appeal. The cause which occasioned the adjournment in no manner affected nor prejudiced the defendant. It would be a most singular proceeding in cases where an adjournment by the judge is ordered to allow issue to be made by suitors at the time to which the court was adjourned, to try the sufficiency of the cause for adjournment. The clerk had no discretion and could not refuse to make the adjournment. His duty under the statute was to adjourn the court as directed in the order. The fact that on the 22d day of April he did not make public proclamation of the adjournment, at the court-house, does not appear to have prejudiced any one. It appears that he had before that notified suitors, jurors, and witnesses, by letter, and it does not appear that any persons were in attendance to whom such proclamation could be made, nor that any one was misled or taken by surprise by reason of the failure to publicly proclaim an adjournment. The order of the judge should have been marked filed when received, and a record entry of the adjournment should have been made on the 22d day of April; but as the order was in the office of the clerk, and he gave notice by publication in a newspaper, and by letter to the parties interested that the term was adjourned to June 3d, we think this was sufficient upon which to ground the *nunc pro tunc* record entry.

It will be borne in mind that there is no showing that the defendant was in any way prejudiced in making his defense by being tried in June, instead of in April. For aught that appears the same jurors were in attendance, who were summoned to attend in April. If the defendant had asked a

continuance, the absence of a record entry of the adjournment might have been cause therefor, upon the ground of surprise, but no continuance was asked, and of course it is to be presumed no cause existed therefor.

II. Mundt was killed on Sunday, June 24th, 1877, at the village of Rhinebeck. It appears that at that time a railroad was in course of construction in that vicinity. There were some two or three drinking saloons in the village, and on that day two gangs of railroad hands were in the village and in and about the saloons. One of the saloons was kept by one Frohm. A quarrel and fight took place in his saloon, in the course of which the defendant exhibited a razor. Afterwards there was a quarrel in the streets of the village, and McGuire and the party with which he was connected followed the other for some distance, and then returned. At the time McGuire was in pursuit of these parties he had his razor in his hand and made threats. Afterward one Anderson, and who it seems was of the McGuire party, attempted to enter Frohm's saloon, and finding it closed broke a window-glass in the front. There were several rooms in the building, and it was used as a saloon and residence. After Anderson broke the window-glass, Frohm, one Horsh, and a person designated by the witnesses as "the big Swede," came out of the saloon building, and Horsh pushed and backed Anderson away. While he was thus pushing him, Anderson applied an abusive epithet to him, whereupon Horsh pushed him in such a way that Anderson fell. Thereupon "the big Swede" kicked Anderson violently and he seemed to be very much injured. Murphy appeared upon the scene, and after two attempts got Anderson up. It appears from the evidence that he was not injured seriously, and that his helplessness was largely attributable to his drunken condition. Murphy called McGuire, and he with McDermott and McEnery appeared, and all of them, including Anderson, advanced upon the Swede, who was still outside the saloon with his coat off. Some of them had sticks and others brick-

2. CRIMINAL law : murder : joint offense.

bats, and the Swede retreated. They followed up, and as the Swede ran into the back kitchen door one of the party threw a brick at him which struck the side of the door. The pursuing party closed in on the building and Anderson struck the front door. About this time Mundt came out. He picked up a piece of fence board about three feet long and knocked Anderson down close by the house. A general fight ensued. McGuire and the others with him closed in with Mundt and pulled or knocked him down, and McGuire, as some of the witnesses express it, lay down on him. In a very short time the parties separated. Mundt got up and went into the house and died in fifteen minutes, from a wound in his left side, some six or seven inches in length and extending through the coat or wall of the abdomen.

After Mundt went into the house, McGuire and his party struck upon the doors. At the place where McGuire struck he left blood marks upon the door. McGuire was next seen upon a horse, and was told that a man had been killed. This was in the evening. He and another of the defendants were arrested next morning in Waterloo, some eighteen miles distant. When McGuire was arrested the razor was found in his boot, and there was a stain of blood upon his shirt bosom, and he said that the razor would "give him away."

Mundt was fifty years old and lived a quarter of a mile from Frohm's saloon, and he and his wife were there with Frohm's family spending part of the day. He had taken no part in any quarrel, but remained in the house after it was closed and locked, and after Anderson broke the glass in the window.

The foregoing are undisputed facts in the case. There is one other most material fact, which it seems to us, from a careful examination of the evidence, ought not to be a subject of dispute. It is this: In addition to the foregoing facts as to McGuire being armed with a razor and exhibiting it, accompanied with threats, and the blood stains left by his hand upon the door, blood stains upon his shirt, his flight, the razor concealed in his boot, and his position at the time the fatal

wound was inflicted, the wife of Frohm testified positively that she saw the defendant McGuire in the very act of inflicting the wound with the razor. No witness contradicts her, and we think the court might well have left the question of the joint guilt of the defendants out of the case, for in our opinion no honest jury could have found any other verdict than that McGuire, with his own hand, took the life of the deceased.

But the court instructed the jury fully, and, as we think, not erroneously, upon the criminality of persons who engage jointly in an unlawful enterprise, and who take the life of a person while pursuing the common design. Objection is made to these instructions, but we think the objection is not well taken. It is urged that the common design, if any, was merely a purpose upon the part of McGuire and his party to injure the Swede, and that when he escaped into the house, and Mundt came out and made an attack upon the defendants with the piece of fence board, the common design to punish the Swede was at an end. It is further insisted that Mundt came out and made the attack, by striking Anderson and advancing upon the others and attempting to strike them, and that there was no common design nor agreement to injure Mundt. But it seems to us these and other questions raised by counsel are all answered effectually by a general view of the situation of these parties. Frohm and his German friends were in the house with the doors locked when the Swede kicked Anderson. All of the other party rallied to punish the Swede, who retreated into the house. The other party, armed with brickbats, McGuire with his razor, and, as it appears from the evidence, another with an open knife, and another with a dirk, did not cease the pursuit when the Swede went into the house. They advanced upon the house and attempted to go in. At this point Mundt went out. He was in the house when the window was broken and the side of the door was struck with a brick, and the evidence shows that some of those in the house were very much frightened. Now

it is insisted that there is no evidence that Mundt stood on the defensive when he went out, but that all the evidence shows he attacked the other party. In this counsel is mistaken. Some of the witnesses testified that he did not advance at all, and they are corroborated by the fact that the stains of his blood were found very close to the building.

We think the jury may fairly have found from the evidence that these defendants advanced upon the saloon intending to enter it and punish the Swede, and that because Mundt resisted their attempt they took his life, he being an obstacle in the way of carrying out their design. Even after they killed Mundt they were not appeased, but knocked on the doors and demanded admission. Aside from all this, suppose Mundt did make an attack; the evidence is undisputed that three of the defendants, after Mundt was disarmed and after they had thrown him to the ground, and he was helpless, were upon him and holding him, and the conclusion is irresistible that one of them inflicted the fatal wound.

It seems scarcely necessary to say that all those who were actually engaged against Mundt are equally guilty. We have not thought it necessary to examine the objections to the instructions in detail. The foregoing general remarks seem to us to be sufficient. When it is conceded, as it must be, that there was evidence tending to show that Mundt merely put himself in a position to resist the attack of McGuire and his party upon the house, they being in pursuit of the Swede, and that they bore him down and took his life, the instructions as to a common design, and joint participation in the crime, were correctly given.

AFFIRMED.